IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JACKELINE GUZMAN-TEBENAL,

    Plaintiff,

    v.                                    CIVIL NO. 04-1539 (RLA)

ASPIRA OF PUERTO RICO, INC.,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant has moved the court to enter summary judgment in this action dismissing plaintiff's claims. The court having reviewed the memoranda filed by the parties together with the accompanying evidence submitted therewith hereby rules as follows.

Plaintiff instituted this action pursuant to the American with Disabilities Act (ADA), 42 U.S.C. §§ 12101, *et seq.* and its local counterpart, Puerto Rico Law 44 of July 2, 1985, P.R. Laws Ann. tit. 1, § 501 *et seq.*, (1999) for alleged disability discrimination in employment. Additionally, plaintiff alleges tort liability under arts. 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141 and 5142 (1990).

### FACTS

The following facts are uncontested pursuant to the evidence submitted by the parties.

Defendant, ASPIRA OF PUERTO RICO, INC. ("ASPIRA"), is a non-profit organization that provides educational and other types of services to low income families in Puerto Rico. ASPIRA works very

**CIVIL NO. 04-1539 (RLA)**                                          **Page 2**

closely with the Head Start and Early Head Start Programs in Puerto Rico, which are federally funded programs that also provide services to pre-school children and their low-income families.

The Early Head Start Program provides services to children six months old up to the age of three years and the Head Start Program provides services to four and five year-old children.

Plaintiff, JACKELINE GUZMAN-TEBENAL commenced working with ASPIRA on September 18, 1998, as a "Teacher's Assistant" assigned to the Cambalache Early Head Start. As a Teacher's Assistant, plaintiff helped the Teacher in the daily activities of educating and caring for the children assigned to their care.

In November 1999 plaintiff requested and was granted a transfer from the Teacher's Assistant position to a Visitor position, assigned to the municipalities of Rio Grande and Canovanas.

A Visitor is an ASPIRA employee who visits families at their homes to provide assistance with their children's upbringing. At an average, plaintiff visited 10 to 11 families per week spending one day at the Early Head Start Center doing administrative work.

On or about August 2001 plaintiff was diagnosed with a medical condition called "fibromyalgia".

Plaintiff requested to be transferred back to the Teacher's Assistant Position.

VIVIAN SANTIAGO, Facilitator, advised plaintiff to request the transfer in writing and to bring a medical certificate recommending the accommodation being requested.

Plaintiff submitted a medical certificate from her rheumatologist, DR. SALVADOR VILA, dated August 21, 2001 which indicated that: (1) plaintiff had been diagnosed with fibromyalgia; (2) she could not be exposed to extreme temperatures; (3) she could not make repetitive or continuous movements nor maintain a fixed position for a prolonged period of time; (4) plaintiff could not drive or perform any activities that required fine motor skills to prevent an accident due to her diminished capacity to concentrate, and (5) plaintiff could not carry heavy objects for a long period of time.

On August 23, 2001, plaintiff submitted a written request to be transferred to the position of Teacher's Assistant.

Plaintiff was advised that due to the severity of her condition, the limitations imposed by her doctor and the requirements of her job she could not continue to perform the functions of a Visitor nor be placed in the Teacher's Assistant position. Plaintiff was also informed that, for the time being, she could: (1) request a family medical leave so she could rest for up to three months; (2) request non-occupational disability benefits, or (3) request Social Security disability benefits.

Plaintiff remained working at the Center from early September through late October 2001 performing clerical work.

Plaintiff conceded that at the time she requested the accommodation in 2001 she could no longer work as a Visitor.

At that time, the only vacant position available was that of a Teacher's Assistant.

On October 26, 2001, plaintiff filed a discrimination charge with the Antidiscrimination Unit of the Puerto Rico Department of Labor and Human Resources.

On November 7, 2001, plaintiff requested Social Security disability benefits.

On June 4, 2002, plaintiff started receiving treatment at the State Insurance Fund.

On June 2, 2003, plaintiff was discharged from the State Insurance Fund.

On June 9, 2003, plaintiff met with JANESELY JIMENEZ to discuss her return to the Early Head Start Center. MS. JIMENEZ suggested that plaintiff work alongside LUZ SANTIAGO, her substitute as Visitor in her absence, making visits together. During said meeting plaintiff requested to be transferred to a Teacher's Assistant position. At that time plaintiff was using a cane to walk and admitted that she could not be left alone in a classroom with the children.

On June 20, 2003 plaintiff was sent for a medical examination. After the examination plaintiff had a car accident.

Late in June 2003, on the date plaintiff was scheduled to meet with ASPIRA regarding her situation, she called FRANCIS COLON, Human Resources officer, to cancel the meeting.

Plaintiff was granted Social Security disability benefits on June 12, 2003 retroactive to October 29, 2001.

## SUMMARY JUDGMENT

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F. 3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). See also, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F.Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cruz-Baez v. Negron-Irizarry, 360 F.Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a

CIVIL NO. 04-1539 (RLA)                                    **Page 7**

motion for summary judgment, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; <u>Navarro v. Pfizer Corp.</u>, 261 F.3d 90, 94 (1st Cir. 2000); <u>Grant's Dairy v. Comm'r of Maine Dep't of Agric.</u>, 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". <u>Lopez-Carrasquillo v. Rubianes</u>, 230 F.3d 409, 412 (1st Cir. 2000); <u>Maldonado-Denis v. Castillo-Rodríguez</u>, 23 F.3d 576, 581 (1st Cir. 1994); <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

Further, any testimony used in a motion for summary judgment setting must be admissible in evidence, i.e., based on personal knowledge and otherwise not contravening evidentiary principles. Rule 56(e) specifically mandates that affidavits submitted in conjunction with the summary judgment mechanism must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." <u>Hoffman v. Applicators Sales and Serv., Inc.</u>, 439 F.3d 9, 16 (1st Cir. 2006); <u>Carmona v. Toledo</u>, 215 F.3d 124, 131 (1st Cir. 2000). *See also*, <u>Quiñones v. Buick</u>, 436 F.3d 284, 290 (1st Cir. 2006) (affidavit inadmissible given plaintiff's failure to cite "supporting evidence to which he could testify in court"). The affidavit must contain facts which are admissible in evidence. <u>Lopez-Carrasquillo v. Rubianes</u>, 230 F.3d at 414. "Evidence that is inadmissible at trial, such as inadmissible

CIVIL NO. 04-1539 (RLA)                                      Page 8
_____

hearsay, may not be considered on summary judgment." <u>Vazquez v. Lopez-Rosario</u>, 134 F.3d 28, 33 (1st Cir. 1998).

**ADA**

The ADA prescribes that no employer "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to... discharge of employees... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

In cases where a plaintiff alleges that an adverse employment action was taken due to a disability, the "burden-shifting framework outlined by the Supreme Court in Mc-Donnell-Douglas" is used. <u>Tobin v. Liberty Mut. Ins. Co.</u>, 433 F.3d 100, 104 (1st Cir. 2005). Accordingly, in order to qualify for the ADA's protection, plaintiff has the initial burden of establishing that: (1) she suffers from a "disability" within the meaning of the ADA; (2) she was able to perform the essential functions of her position with or without reasonable accommodation; and (3) the employer's adverse employment actions were based in whole or in part on her disability. <u>Mulloy v. Acushnet Co.</u>, 460 F.3d 141, 145-46 (1st Cir. 2006); <u>Orta-Castro v. Merck, Sharp & Dohme Quimica P.R., Inc.</u>, 447 F.3d 105, 111 (1st Cir. 2006); <u>Wright v. CompUsa, Inc.</u>, 352 F.3d 472, 475 (1st Cir. 2003); <u>Tobin</u>, 433 F.3d at 104; <u>Bailey v. Georgia-Pacific Corp.</u>, 306 F.3d 1162, 1166 (1st Cir. 2002); <u>Carroll v. Xerox Corp.</u>, 294 F.3d 231, 238 (1st Cir. 2002); <u>Gillen v. Fallon Ambulance Serv., Inc.</u>, 283 F.3d 11, 18 (1st Cir. 2002); <u>Quinn v. A.E. Staley Mfg. Co.</u>, 172 F.3d 1, 9 n.3

(1st Cir. 1999); Tardie v. Rehab. Hosp. of Rhode Island, 168 F.3d 538, 541 (1st Cir. 1999).

The term "discriminate" under the ADA also includes the employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability". 42 U.S.C. § 12112(b)(5)(A).

A failure-to-accommodate claim has a different set of requirements, all of which must be met if plaintiff is to survive a motion for summary judgment. The First Circuit Court of Appeals has listed these as: (a) plaintiff must furnish sufficient admissible evidence that she is a qualified individual with a disability within the meaning of the ADA; (b) that she worked for an employer covered by the ADA; (c) that the employer, despite its knowledge of the employee's physical limitations, did not accommodate those limitations; (d) that the employer's failure to accommodate the known physical limitations affected the terms, conditions, or privileges of the plaintiff's employment. Orta-Castro, 447 F.3d at 112; Tobin, 433 F.3d at 107; Higgins v. New Balance Athletic Shoe, 194 F.3d 252, 264 (1st Cir. 1999). See also, Feliciano-Hill v. Principi, 439 F.3d 18, 26 (1st Cir. 2006) (same elements under the Rehabilitation Act).

### Disability/Qualified Individual

Whether plaintiff seeks relief based on employment discriminatory practices or a failure to accommodate she must first meet the requirement of a "disability" under the ADA. For summary

judgment purposes, defendant does not dispute that plaintiff was disabled within the meaning of ADA.

Defendant contends, however, that plaintiff was not a "qualified individual" for purposes of the statute in that she could not perform the essential job functions of the Teacher's Assistant position she applied for in August 2001.

It should be noted that, depending on the circumstances, reasonable accommodation cases may be initially approached from the individual's ability to carry out the essential functions of his/her position. *See, i.e.*, Mulloy, 460 F.3d at 148 ("Before we proceed further with the analysis of [plaintiff's] claim that [defendant] should have allowed him to work at a remote location, we must decide whether the ADA requires us to evaluate this claim as an essential function issue or as a reasonable accommodation issue.")

As part of her burden, plaintiff must also establish that she was capable of performing the essential functions of her job either with or without accommodation. "It is plaintiff's burden to prove that, at the time she sought [accommodation] she had the ability to perform the essential functions of [her position]." Soto-Ocasio v. Fed. Express Corp., 150 F.3d 14, 18 (1st Cir. 1998). "'In order to be a 'qualified individual' under the Act, the burden is on the employee to show: first, that she possesses the requisite skill, experience, education and other job-related requirements of the position, and second, that she is able to perform the essential functions of the position with or without reasonable accommodation.'" Mulloy, 460 F.3d

CIVIL NO. 04-1539 (RLA)                                        **Page 11**

at 147 (1st Cir. 2006) (citing <u>Garcia-Ayala v. Lederle Parenterals,</u>

<u>Inc.</u>, 212 F.3d 638, 646 (1st Cir. 2000)); <u>Soto-Ocasio</u>, 150 F.3d at 18;

*see also*, 29 C.F.R. § 1630.2(m).

"Moreover, if (and to the extent that) essential job functions

implicate the safety of others, the plaintiff must demonstrate that

she can perform those functions in a manner that will not endanger

others." <u>Gillen</u>, 283 F.3d at 24.

"An 'essential function' is a fundamental job duty of the

position at issue [but] does not include the marginal functions of

the position." <u>Mulloy</u>, 460 F.3d at 147 (internal citations and

quotation marks omitted); 29 C.F.R. § 1630.2(n)(1).

The regulations further provide that the factors to be

considered in ascertaining whether a particular job function is

essential include: "[t]he employer's judgment as to which functions

are essential... [w]ritten job descriptions... [t]he amount of time

spent on the job performing the function... [t]he consequences of not

requiring the incumbent to perform the function... [t]he work

experience of past incumbents in the job; and/or [t]he current work

experience of incumbents in similar jobs." 29 C.F.R. 1630.2(n)(3).

*See also*, <u>Mulloy</u>, 460 F.3d at 147.

Additionally, the court must also defer to the position

requirements established by the employer. "In the absence of evidence

of discriminatory animus, we generally give substantial weight to the

employer's view of job requirements. In other words, our inquiry into

essential functions is not intended to second guess the employer or

to require the employer to lower company standards." Mulloy, 460 F.3d at 147 (citations and internal quotation marks omitted). *See*, Mason v. Avaya Commc'n, 357 F.3d. 1114, 1122 (10th Cir. 2004) ("[court] reluctant to allow employees to define the essential functions of their positions based solely on their personal viewpoint and experience.")

In order to prevail in her ADA claim in this action plaintiff must establish that she was able to perform the essential functions of the Teacher's Assistant position in effect in August 2001 with or without a reasonable accommodation. To this effect, we shall begin by examining the particular duties of the position as related by plaintiff according to her prior experience as well as those required by the job description amended subsequent to plaintiff's transfer to the Visitor position in 1999.[1]

In her deposition, plaintiff indicated that while she worked as a Teacher's Assistant from 1998 to 1999, she helped the Teacher in the daily activities of educating and caring for the children which included: cleaning the classroom and disinfecting the toys; supervising the children to make sure they did not get hurt while playing, reading stories to the toddlers and children as well as talking, playing and dancing with them; cleaning the children and changing their diapers.

---

[1] We find that defendant adequately laid the foundation for the admissibility of the Functions and Duties revised in February 2000. *See*, Sworn Statement of JANESELY JIMENEZ attached to defendant's Reply (docket No. 56).

Additionally, according to the job description in effect since the year 2000, the Teacher's Assistant was also required to have a driver's licence since she had to regularly visit the homes of the children under her care to "know the family and the environment where they develop."[2] The Teacher's Assistant was supposed to take over "all the activities addressed at the children of the center" in the Teacher's absence.[3] In the event of absence of the person in charge of the meals or maintenance, it behooved the Teacher's Assistant to prepare the meals, run the kitchen and clean the kitchen and the center.[4] Additional duties included: actively participating in special activities and field trips;[5] taking first aid and other safety courses;[6] providing first aid when needed;[7] collaborating with the teacher in conducting periodic fire, earthquake and shooting drills,[8] and securing the center's equipment and materials in case of hurricane.[9]

---

[2]  Functions and Duties of Teacher's Assistant (Feb. 2000) ¶ 17 Attached to Reply (docket No. 56).

[3]  *Id.* ¶¶ 4 and 5.

[4]  Functions and Duties of Teacher's Assistant (Feb. 2000) ¶ 17 Attached to Reply (docket No. 56) ¶ 8.

[5]  *Id.* ¶ 7.

[6]  *Id.* ¶ 19.

[7]  *Id.* ¶ 13.

[8]  *Id.* ¶ 21.

[9]  *Id.* ¶ 22.

In the medical certificate submitted by plaintiff in August 2001 justifying her request for accommodation, DR. VILA unconditionally indicated that plaintiff could not drive. He also noted that plaintiff's ability to concentrate was diminished; could not make repetitive or continuous movements nor maintain a fixed position for a prolonged period of time nor could she carry heavy objects.[10]

Further, at that time, plaintiff herself told VIVIAN SANTIAGO, one of her supervisors, that she had blackouts. In relating her condition and symptoms to MS. SANTIAGO, plaintiff specifically indicated that "this condition is really painful. Sometimes I get these horrible headaches... sometimes I loose (sic) my eyes and ears. I cant' see or I can't listen. I cannot say when or why."[11]

EDME RUIZ TORRES, Director of the Head Start/Early Head Start Program of ASPIRA, explained that its decision to deny plaintiff's request was based on the entity's responsibility for the safety of the children which could not be guaranteed given plaintiff's condition. Defendant was concerned with the risk of plaintiff not being able to properly take care of the children. Part of the functions of the Teacher's Assistant included picking up the infants and toddlers for: changing their diapers, comforting them when crying

---

[10] Plaintiff attempts to undermine the validity of the medical certificate of her treating physician DR. VILA, a rheumathologist, which she herself procured. However, we find no reason to discard his findings. Additionally, plaintiff blocked defendant's attempts to request additional information from DR. VILA.

[11]  Depo. Tr. 47.

or putting them to sleep. Additionally, there was also the possibility of the sudden need to stop the toddlers when they run unexpectedly. None of which plaintiff could do.[12]

Based on the foregoing, it is clear that plaintiff could not perform the essential functions of the position she requested. Apart from not being able to drive, she was not capable of staying alone with this group of children because of her blackouts. Part of her duties were also to constantly observe children which she could not adequately do inasmuch as her ability to concentrate was diminished. Her limitation in carrying heavy objects also clashed with the need to feed, clean and comfort the children as well as to respond in case of an emergency. Additionally, her limitations might also interfere if the need for her to be in charge of the meals, run the kitchen and/or clean the kitchen and the center arose. Her ability to actively participate in special activities and field trips might also be impaired.

Plaintiff's limitations clashed with the essence of the only job available for her in ASPIRA at the time. It is important to bear in mind that the position at issue involved the care of eight to ten children three years or younger, a tender age where constant and special attention is demanded and any small deviation therefrom may prove fatal.

---

[12] *See*, Sworn Statement attached to the Motion for Summary Judgment (docket No. 32).

CIVIL NO. 04-1539 (RLA)                                         Page 16

---

**Accommodation**

Even assuming that plaintiff would have been able to establish that she was a "qualified individual" with a disability which warranted a reasonable accommodation under ADA she would not be able to prevail in this particular claim.

"Reasonable accommodation" includes "[m]odifications or adjustments... to the manner or circumstances under which the position... is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position". 29 C.F.R. § 1630.2(o)(1)(ii). "A 'reasonable accommodation' is one which would enable the plaintiff to perform the essential functions of her job and at least on the face of things is feasible for the employer under the circumstances." Mulloy, 460 F.3d at 148 (citation and internal quotation marks omitted).

An employer is not required to provide a reasonable accommodation if it would entail "an undue hardship" on its business operation. 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.2(p).

As indicated by the court in Mulloy, suggested accommodations which do away with an essential job function are not reasonable. Rather than an accommodation, these would entail redefining the position or creating a new position. "It is well established that, while a reasonable accommodation may include job restructuring, 42 U.S.C. § 12111(9)(B), the law does not require an employer to accommodate a disability by foregoing an essential function of the position or by reallocating essential functions to make other

workers' jobs more onerous." Mulloy, 460 F.3d at 153 (internal citation and quotation marks omitted); Soto-Ocasio, 150 F.3d at 20; Phelps v. Optima Health, Inc., 251 F.3d 21, 26 (1st Cir. 2001).

It is not clear from the record which specific accommodation plaintiff was seeking for the Teacher's Assistant position. In her opposition the arguments are essentially centered on the driving requirement. The possibility of providing special furniture or installations are also mentioned.

However, given the particular nature of the responsibilities attendant to a person taking care of very young children, it is axiomatic that constant physical and mental alertness are indispensable to the job. Even if plaintiff were to be excused from having to drive and/or special furniture arrangements were made as she suggested, at the end of the day the critical demands of the job could not be forsaken. Thus, no reasonable accommodation within the context of the ADA was available to her. The demands were intrinsic to the position whether or not plaintiff was to be alone with the children.

Based on the foregoing, because plaintiff was unable to carry out essential functions of her job, i.e., attending to the needs of young children with or without accommodation we conclude that she was not a "qualified individual" with a disability within the meaning of the ADA.

Accordingly, plaintiff has no actionable failure to accommodate claim under the ADA.[13]

### Constructive Discharge

As the term unequivocally connotes, the *sine qua non* requirement for a constructive discharge claim is that a plaintiff is compelled to leave his or her employment.

> [T]he purpose of the constructive discharge doctrine [is] to protect employees from conditions so unreasonably harsh that a reasonable person would feel compelled to leave the job. The doctrine reflects the sensible judgment that employers charged with employment discrimination ought to be accountable for creating working conditions that are so intolerable to a reasonable employee as to compel that person to resign.

Ramos v. Davis & Geck, Inc., 167 F.3d 727, 732 (1st Cir. 1999). *See also*, Feliciano-Hill v. Principi, 439 F.3d 18, 27 (1st Cir. 2006); Vieques Air Link, Inc. v. U.S. Dep't of Labor, 437 F.3d 102, 108 (1st Cir. 2006).

In order to establish a claim based on constructive discharge "plaintiff must prove that his employer imposed working conditions so intolerable that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities." Landrau-Romero

---

[13] Because we find that plaintiff was not able to carry out the essential functions of the position she wished to occupy, there is no need for the court to address defendant's "direct threat" defense under 42 U.S.C. § 12111(3).

v. Banco Popular de P.R., 212 F.3d 607, 613 (1st Cir. 2000) (citations and internal quotations omitted); Jorge v. Rumsfeld, 404 F.3d 556, 562 (1st Cir. 2005); Simas v. First Citizen's Fed. Credit Union, 170 F.3d 37, 46 (1st Cir. 1999); Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d 23, 26 (1st Cir. 1997). See also, Melendez-Arroyo v. Cutler-Hammer de P.R. Co., Inc., 273 F.3d 30, 36 (1st Cir.2001) ("treatment so hostile or degrading that no reasonable employee would tolerate continuing in the position").

The "subjective perceptions" of the employee are insufficient. The reasonableness of plaintiff's decision to leave his employment is an objective one and will be examined based on the ability to "present sufficient evidence to allow the jury to credit his claim that a reasonable employee would have felt compelled to resign under the circumstances," Ramos v. Davis & Geck, Inc., 167 F.3d at 731 and "cannot be triggered solely by the employee's subjective beliefs, no matter how sincerely held." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 28 (1st Cir.2002). See also, Feliciano-Hill, 439 F.3d at 27 and Serrano-Cruz, 109 F.3d at 26 (applying "objective standard" in examining employer's actions).

Likewise, discriminatory intent is not part of the probative calculus for this particular type of claim. Thus, plaintiff is not required to present "proof that the employer created the intolerable work conditions with the specific intent of forcing the employee to resign." Ramos v. Davis & Geck, Inc., 167 F.3d at 732.

Plaintiff claims that upon returning to ASPIRA in June of 2003 after her discharge from the State Insurance Fund, she was not provided any accommodation by way of appointment to the Teacher's Assistant Position which forced her to abandon any prospect of employment with ASPIRA. In other words, her constructive discharge claim is based on the fact that she continued to be assigned to the position of Visitor which forced her to leave.

According to the evidence on file on June 9, 2003, plaintiff met with JANESELY JIMENEZ to discuss her reintegration to work after her extended leave. At that time plaintiff was using a cane to walk. Plaintiff indicated that she could not drive and requested to be appointed to the Teacher's Assistant position as a reasonable accommodation for her condition. It was suggested that plaintiff could assist the person hired temporarily as Visitor until her return and steps were taken to define her duties in this regard. Plaintiff again reiterated that she could not perform the duties of a Visitor because of her condition. Plaintiff advised that she would not visit the parents along with her replacement even if her substitute drove because she was concerned how her substitute would react if plaintiff had a fainting spell and/or her pain intensified. Plaintiff further argued that she could not sit for a long period of time. Plaintiff indicated that she could not participate in the "Achievements Day" because she could not stand for prolonged periods of time. As an alternative, plaintiff suggested an office job without a reduction in salary but this option was not viable.

CIVIL NO. 04-1539 (RLA)                                        **Page 21**

On June 13, 2003, plaintiff requested a meeting to submit a certificate of a medical appointment for that day as well as a calendar of her upcoming physical therapy appointments. Again she requested to be removed from the Visitor's position. Plaintiff further indicated that she could not be left alone in a classroom.

On June 20, 2003, plaintiff was evaluated by DR. RAFAEL E. SEIN upon defendant's request. After the examination, plaintiff had a car accident and never returned to work.

Subsequently, late June 2003, on the day plaintiff was supposed to meet with ASPIRA regarding her situation, she called FRANCIS COLON, Human Resources Officer, to call off the meeting. According to plaintiff, she cancelled due to a conflicting medical appointment. Plaintiff alleges that during the course of the conversation she advised MS. COLON that plaintiff would wait for ASPIRA's decision regarding her accommodation request upon review of DR. SEIN's medical evaluation but that ASPIRA never contacted her again.

Plaintiff was granted Social Security disability benefits on June 12, 2003 retroactive to October 29, 2001.

The issue then becomes whether the fact that plaintiff was not assigned to the position she requested in ASPIRA made her working conditions so intolerable which induced her to resign. In other words, plaintiff's constructive discharge argument is premised on her right to the Teacher's Assistant position as an accommodation.[14]

---

[14]  Again, plaintiff concedes that in June 2003 she was still not fit for the Visitor's position.

However, as previously noted, based on the evidence on record plaintiff was not a "qualified individual" under ADA to occupy the Teacher's Assistant Position in 2001, much less two years later. It is uncontested that by 2003 her condition had further deteriorated to the extent that she then needed a cane to walk. At a June 9, 2003 meeting plaintiff also voiced her fear of fainting or her pain exacerbating. Plaintiff also noted that she could not sit or stand for long periods of time. On June 13, 2003, plaintiff admitted that she could not stay alone in a classroom.

Faced with this scenario, we conclude that in June 2003 defendant was under no duty under ADA to provide plaintiff with the accommodation she requested and therefore, no constructive discharge can be inferred from the circumstances leading to her decision not to return to work at ASPIRA.

Plaintiff attempts to raise an issue of fact regarding her qualifications for the Teacher's Assistant position based on a report prepared by DR. VICENTE SANCHEZ-QUILES, plaintiff's expert witness. We find, however, the expert's conclusions flawed.[15] Initially, the report failed to take into consideration plaintiff's particular circumstances. No notation is made of plaintiff's complaints, complications and/or treatment but rather a discussion of the fibromyalgia condition in general terms was related.[16] As pointed out

---

[15] *See*, Defendant's Motion in Limine (docket No. **57**) and Plaintiff's Motion in Opposition (docket No. **68**).

[16] Depo. Tr. 34.

CIVIL NO. 04-1539 (RLA)                                      **Page 23**

by defendant, DR. SANCHEZ-QUILES did not take into consideration plaintiff's blackouts in rendering his opinion.[17] He was not even aware that by June 2003, she was walking with a cane.[18] Further, the expert acknowledged that his opinion that plaintiff was qualified for the Teacher's Assistant Position even in 2003 was based on the requirements included in the Occupational Title for teacher's aides at the elementary and secondary school level not for children younger than three years old.

### Law 44

In addition, plaintiff seeks relief under Law 44, the local disability provisions. Inasmuch as Law 44 mirrors ADA, because we have concluded that plaintiff is not a "qualified individual" under the federal statute, her Law 44 disability claim must also fail. Garcia-Diaz v. Darex, 148 D.P.R. 364, 385 (1999); Roman Martinez v. Delta Maintenance Serv., Inc., 229 F.Supp.2d 79, 86 (D.P.R. 2002).

### Arts. 1802 & 1803

Plaintiff having failed to oppose defendant's arguments in support of the dismissal of the claims asserted under the Puerto Rico tort provisions and it appearing that defendant's arguments are legally sound, these claims are **DISMISSED.**

[17]   Depo. Tr. 43.

[18]   Depo. Tr. 52.

CIVIL NO. 04-1539 (RLA)                                         **Page 24**

---

### CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment (docket No. **32**)[19] is **GRANTED** and the complaint filed in this case is hereby **DISMISSED.** Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 14th day of May, 2007.

                                  S/Raymond L.  Acosta
                                  RAYMOND L. ACOSTA
                                  United States District Judge

---

[19]   See, Plaintiff's Motion in Opposition (docket No. **46**) and Reply (docket No. **56**).